LURIE, ZEPEDA, SCHMALZ, HOGAN & MARTIN
James J. Finsten, State Bar No. 234999
jfinsten@lurie-zepeda.com
1875 Century Park East, Suite 2100
Los Angeles, California 90067-2574
PH: (310) 274-8700 FAX: (310) 274-2798

Attorney for Plaintiff Ermanita Corporation

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERMANITA CORPORATION, a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOMITA, a California Municipal Corporation,<br><br>Defendant. | **Case No. :**<br><br>**Hon.**<br><br>**VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

NOW COMES the Plaintiff, Ermanita Corporation, and for its Complaint against Defendant, City of Lomita, California, alleges as follows:

## Introduction

1. This is a civil action in which Ermanita Corporation seeks injunctive and declaratory relief against the Defendant, the City of Lomita, to prevent the City from discriminating against the disabled through certain zoning regulations that illegally limit housing opportunities for the disabled in Lomita, in violation of the Fair Housing Act (FHA), 42 U.S.C.A. § 3604(f)(1). Through this suit, Ermanita requests injunctive and declaratory relief under 28 U.S.C. § 2201 and the Federal Rules of Civil Procedure because the City's zoning code explicitly discriminates between housing options available to non-disabled and disabled persons in its residential districts. Specifically, several uses

that provide housing for non-disabled persons, and which are not restricted based on the number of residents, are permitted by right, whereas "State-licensed community care facilities with seven (7) or more persons in addition to the caregiver" must obtain a Conditional Use Permit (CUP) in each residential zoning district. Therefore, on its face, the City's zoning code offers differential treatment based on disability, violating the Fair Housing Act.

**Parties**

2. Ermanita Corporation (hereinafter "Ermanita" or "Plaintiff") is a California Corporation established for the purpose of operating State-licensed Community Care Facilities serving the elderly in need of 24-hour nonmedical care in California.

3. Defendant, City of Lomita (hereinafter "the City" or "Defendant"), is a chartered municipal corporation existing under the laws of the State of California, located within the County of Los Angeles.

**Jurisdiction**

4. This Court has subject matter jurisdiction over this case pursuant to 28 USC § 1331, as this action arises under the Fair Housing Act (FHA), 42 U.S.C.A. § 3601, *et. seq*. and the First and Fourteenth Amendments to the United States Constitution; under 28 USC § 1343(a)(3), in that it is brought to redress constitutional violations and deprivations of law under color of state law, of rights, privileges and immunities secured by the United States Constitution; under 42 USC § 1983, which provides causes of actions for the protection of civil and constitutional rights and damages; and under 42 USC § 1988, to secure costs and reasonable attorney fees as part of the case.

5. This Court has supplemental jurisdiction over Plaintiff's California Public Records Act (CPRA), Cal. Gov't Code § 7921.000, *et. seq.* claims asserted herein as those claims form part of the same case or controversy as the federal questions asserted herein, pursuant to 28 U.S.C. § 1367(a) and Cal. Code of Civ. Proc. § 1060.

**Venue**

6. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) in that (i) Plaintiff occupies property within this judicial district; (ii) Defendant is situated within this judicial district; and (iii) all the claims asserted by Plaintiff arose within this judicial district.

## Statement of Facts

***Ermanita's Religious Mission***

7. Ermanita is a Muslim-owned and operated company that has operated several State-licensed community care facilities serving the elderly and disabled by providing housing, medical care and religious services in Southern California since 2017.

8. Currently, the Plaintiff has a license from the State of California to operate a residential care facility for the elderly under the name "BB Cares" serving a maximum of six persons at 2254 250th Street, Lomita, CA 90717 (the "Property"). **Exhibit 1**, License.

9. The Property is located in an R-1, single-family residential zone.

10. The Plaintiff possesses a lease agreement to operate the aforementioned facility from the Property's owner, Farah Bangash. **Exhibit 2**, Lease.

11. Residential facilities for the elderly are a sub-set of Community care facilities as recognized by California law. California Health and Safety Code § 1502(a)(1)("Residential facility means any family home, group care facility, or similar facility determined by the department, for 24-hour nonmedical care of persons in need of personal services, supervision, or assistance *essential for sustaining the activities of daily living or for the protection of the individual.*") (quotations omitted).

12. In pursuit of serving the elderly in the City of Lomita, the Plaintiff has received adverse reactions from some neighbors who have complained to the City of Lomita regarding the Plaintiff's services. **Exhibit 3**, Email from Lomita Citizen.

***Application for a permitted use: A Community Care Facility***

13. Based on the Plaintiff's knowledge of the religious needs of the area, it's aging population, the disabled and the high demand for their services in the City, the Plaintiff planned to expand their operations.

14. Therefore, in 2021 the Plaintiff purchased 2254 250th Street, Lomita, CA 90717 with the intention of ultimately constructing a new facility on the property to serve the elderly. The Plaintiff also planned to make certain rennovations to the existing building on the Property to serve this facility.

15. In pursuit of this objective, on October 9, 2021, the Plaintiff submitted through its President and Chief Executive Officer Farah Bangash an application for a building permit for a two-story living area addition to the existing single-family home on the Property. **Exhibit 4**, Pre-Review Application 21-665.

16. Following the submission of this application, the representatives of Ermanita Corporation corresponded with Associate Planner, Laura MacMorann.

17. On October 11, 2021, Ms. MacMorran informed Farah Bangash that the application would require a new set of plans to demonstrate conformity with several of the City's zoning requirements. MacMorann also informed Ms. Bangash that the Plaintiff was required to pay for $260 in fees as the application was for "new construction." ***Id.***

18. According to the City's records, the City then marked this application "rejected" on October 11, 2021. ***Id.***

19. Even so, the Plaintiff subsequently submitted these revised plans and paid the fee for review of this application on October 12, 2021, which the City accepted. ***Id.***

20. However, on November 10, 2021 Ms. MacMorann informed the Plaintiff that the "plans are too rudimentary" that "Architectural plans" and a "landscape plan" would also be required. ***Id.***

21. The Plaintiff then provided the requested architectural drawings and landscape plan for the planned addition to the existing building.

22. Even so, on January 28, 2022 the City issued a letter that the Plaintiff's application was "incomplete." **Exhibit 5**, Letter from City of Lomita, January 28, 2022

23. Nearly nine months later on September 15, 2022, Ms. MacMorann informed Ms. Bangash that it would be "beneficial to set up a meeting to discuss the use of the property. We are aware that you are looking to open a large care facility. This use requires a condition use permit. Staff could support an application with the proper design that considers how the use's activities will fit within the community, be contained on the site, and how the building's design is suitable for present and future uses." **Exhibit 4**, Pre-Review Application 21-665.

24. Therefore, the Plaintiff was led to believe by this communication that their planned community care facility with 7 or more beds would be possible on the Property and that the City would work with them to see that the facility could be built.

25. The following year in 2023, the Plaintiff and City officials, including the newly hired planning director Brianna Rindge, held several meetings on March 1, 2023 and April 18, 2023 to discuss the planned community care facility. Through these meetings, the Plaintiff was again led by City officals to believe that the development of the planned community care facility would be feasible on the Property.

26. Ms. Rindge then requested that the Plaintiff investigate applicable zoning and building codes from the City of Los Angeles and Los Angeles County that might be relevant to the client's proposed large community care facility.

27. Although the Plaintiff found this request from the City Planner to be unusual, they nevertheless paid their engineers to investigate these codes and to prepare a new set of architectural drawings for its community care facility for seven or more beds in compliance with applicable Los Angeles County building standards.

28. The Plaintiff, through its representative Andy Bangash, subsequently sent to Ms. Rindge a list of the codes that they believed were applicable to their planned facility as well as revised plans for the facility. **Exhibit 6**, Email from Andy Bangash to Brianna Rindge, May 22, 2023.

29. The Plaintiff did not receive any other indication from City officials that its proposed facility would not be accepted as designed, or that it should take into account other applicable zoning or building codes when designing this facility until October 2023 following a renewed permit application.

30. On October 4, 2023, the Plaintiff submitted a new Pre-Review Application ("Application") for a building permit for the Plaintiff's planned community care facilty to the City of Lomita's Community and Economic Development Department through its President and Chief Executive Officer Farah Bangash. **Exhibit 7**, Pre-Review Application 23-918. The Plaintiff was also required by City officials to pay a fee of over $700 to process this Application.

31. Specifically, the Plaintiffs proposed to to demolish the two structures behind the principal structure on the Property and construct a three-story building which is approximately 19,341 square feet. This facility would accommodate 35 bedroom facility to serve its residents. **Exhibit 8**, Site Plan.

32. The use of the property as as Community Care Facility was deemed a permitted by right use in the R-1 zoning district at the time of the submission of the building permit.

33. In response to the Plaintiff's application, Community and Economic Development Director Brianna Rindge messaged one of the Plaintiff's agents, Sikandar ("Andy") Bangash, the following response:

//

//

Message received about 2254 250th Street, 2 Inbox ×

City of Lomita, CA <noreply@opengov.com>
to me

Oct 17, 2023, 2:29 PM

City of Lomita, CA

Brianna Rindge commented on Administrative Approval:

**Message:** "Hi Andy,

As we've previously communicated, code compliance must be attained before you perform new work on the site. We allowed you to submit concurrently, however this is not a concurrent application as it does not include any information about the demolition/bringing the property into compliance, and also, we advised that you'd need to start with a Zoning Text Amendment to Planning Commission & City Council to permit Senior Housing within R-1. The site is not currently zoned for such use. Also, we still have not received payment of the accumulated fines in the amount of $2,600.

- $500, 9/9/22
- $600, 11/1/22
- $1,500, 12/1/22

Please contact @Erika Barbero to submit your zoning text amendment application. Please submit citation fine payment to @Maria Matesic.

Thank you."

**Where:** 2254 250th Street, 2

**Type:** Pre-Review for Building Permit

**Number:** 23-918

34. In this response, the City classified the Plaintiff's proposed use as "Senior Housing" and not as a "Community Care Facility."

35. While Senior Housing uses were not permitted in R-1 zones at the time the Plaintiff submitted the Application, Community Care Facilities were permitted "by-right."

36. Therefore, the decision to classify the client's proposed use in the Application as "Senior Housing" led to Ms. Rindge communicating to the the Plaintiff that they needed to obtain a "zone text amendment" for their proposed use before proceeding forward with the project.

37. Ms. Rindge did not, however, suggest applying for a "variance" from the City's Zoning Board of Appeals to allow the proposed use—a simpler alternative to seeking a zone text amendment.

38. Furthermore, Ms. Rindge demonstrated arbitrary rationales for the decision to classify the proposed use in the Application as "Senior Housing" and not as a "Community Care Facility."

39. At one point in her email correspondence with Plaintiff relating to the delays in processing the Application, she appeared to suggest that that the Plaintiff's use was actually permitted and requested proof of licensure from California which was subsequently provided to Ms. Rindge. **Exhibit 9**, Email from Brianna Rindge to Ed Casey, April 16, 2024.

40. However, she then reversed course and stated that the client's Application was for a Senior Housing use claiming there was no "medical" or "behavioral health treatment" to take place at the client's proposed facility. **Exhibit 10**, Email from Brianna Rindge to Ed Casey, May 30, 2024. Such a rationale conflicts with the City of Lomita's own definition of a Community Care Facility which adopts the State of California's definition for Community Care Facilities under "California Health and Safety Code § 1502 and 1596.750." *See* City of Lomita Zoning Code, Sec. 11-1.30.01 (2025).

41. The California Health & Safety Code further states that a Community care facility is "any facility, place, or building that is maintained and operated to provide ***nonmedical*** residential care" and includes a "facility determined by the department, for ***24-hour nonmedical care*** of persons in need of personal services, supervision, or assistance for sustaining the activities of daily living or for the protection of the individual." Cal. Health & Safety Code § 1502 (a)(1) (emphasis added).

42. Therefore, the decision to classify the client's proposed use as "Senior Housing" rather than a "Community Care Facility" on the basis that the client was not providing medical care to residents was an arbitrary decision under the City of Lomita Zoning Code and California law.

43. Such arbitrary decision-making has led to uncessary delays and expense for the Plaintiff.

44. Since the Application was submitted in 2023, the City has failed to process this Application.

45. Most recently, the City Manager, Andrew Vialpando re-affirmed that the failure to process the Application was due to the use classification of the project. **Exhibit 11**, Email between Sikandar Bangash and Andrew Vialpando.

**Lomita Changes Its Zoning Ordinance**

46. As of the Plaintiff's application for their facility on October 4, 2023, a "State-licensed community care facilities with seven (7) or more persons in addition to the caregiver" was a by-right use in R-1 zones. **Exhibit 12**, City of Lomita Use Table, March 31, 2024.

47. However, following the Plaintiff's Application, the City of Lomita changed its zoning code so that the Plaintiff's proposed use was now required to obtain a Conditional Use Permit ("CUP").

48. Obtaining a CUP will require the Plaintiff to go through burdensome and costly procedures to obtain permitting approvals for their Property, including the necessity of obtaining review under the California Environmental Quality Act (CEQA), Cal. Pub. Res. Code § 21000 *et seq*.

49. Upon information and belief, this change in the status of "State-licensed community care facilities with seven (7) or more persons in addition to the caregiver" in R-1 zones occurred through the Defendant City Council's passage of Ordinance 863 on October 1, 2024. **Exhibit 13**, Ordinance 863 at pg. 6.

50. Upon information and belief, the decision to alter the City of Lomita's zoning code was at least in part motivated by the City's desire to oppose the Plaintiff's Application and proposed use at the Property.

51. The Plaintiff has reason to believe this given that the City of Lomita specifically designated State-licensed community care facilities with seven (7) or more residents as permitted, by-right uses within R-1 Districts on March 21st, 2023. **Exhibit 14**, City of Lomita Ordinance 845 at pg. 6.

52. However, following the deterioration in the communications between the Plaintiff and the City with respect to the proposed facility, the City then reversed course less than two years later and specified that "State-licensed community care facilities with (7) or more persons in addition to the caregiver" required a CUP in the City's residential zones. **Exhibit 13**, Ordinance 863 at pg. 6.

**The City of Lomita's Residential Zoning Districts**

53. The City has four residential zones: Residential—Agriculture (A-1), Residential—Low density (R-1), Residential—Medium density (R-2), Residential—High density (R-3). City of Lomita Zoning Code, § 11-1.30.00 (2025).

54. Under the City's ordinance, several other uses providing housing to non-disabled persons are permitted as of right in residential zones. These uses include (1) Rooming houses, (2) Senior housing, (3) Multifamily housing, (4) Planned residential developments, (5) Single-family residences (6) Transitional housing, and (7) Two-unit residential developments. *See id.* at § 11-1.30.01.

55. Rooming houses, Senior housing, and Multifamily uses are permitted as of right in R-2 and R-3 zones. ***Id.*** However, Planned residential developments, Single-family residences, and Transitional housing uses are permitted in *every* residential zone as of right. ***Id.*** Finally, Two-unit residential developments are permitted as of right in A-1 and R-1 districts but not in R-2 and R-3 districts. ***Id.***

56. On the other hand, "State-licensed community care facilities with seven (7) or more residents in addition to the caregiver" uses now require a CUP to operate in each residential zone. ***Id.***

57. "State-licensed community care facilities with (7) or more persons in addition to the caregiver" are also not permitted or conditional uses in the City's "Commercial" or "Manufacturing-Commercial" zones. *See id.* at § 11-1.41.01; *id.* at § 11-1.50.02–04.

//

//

**Lomita Provides Incomplete Responses to Public Records Requests**

58. On January 13, 2026 ("Request No. 1") and January 29, 2026 ("Request No. 2") requests for public records were made to the City of Lomita. *See* **Exhibit 15**, First Public Records Request; **Exhibit 16**, Second Public Records Request.

59. The City responded to Request No. 1 on January 23, 2026 and acknowledged that the City possessed documents responsive to our requests.

60. Subsequently, some responsive documents were provided on a "rolling basis" on February 20, 2026, March 23, 2026, April 8, 2026, and April 20, 2026.

61. However, the City has not provided any responsive documentation with respect to the following request made in Public Records Request No. 1:

- If available, a video recording with audio, or, if unavailable, an exact transcript of the following meetings:
    - Meeting between Brianna Rindge, Laura MacMoran, and William Lawson with Farah and Sikander [sic] Bangash on March 1st, 2023.
    - All zoom calls between attorney Edward J. Casey, and municipal officials related to the Bangashs' proposed use of their Property.
    - Meeting between Brianna Rindge, Michael Bai, and Sikander [sic] Bangash on February 26th, 2024.
    - Meeting between the Bangashs', their personal representatives, and municipal officials including Andrew Vialpando and Adrian Rodriguez on September 5th, 2024.[1]

62. Nor has the City provided any objections based on any privilege to the aforementioned requests contained in Request No. 1.

63. The City responded to Request No. 2 on February 5, 2026 and acknowledged that the City possessed documents responsive to our requests.

[1] The City did provide a recording of the City of Lomita City Council meeting held at 6pm on May 21, 2026 which was also requested in the January 13, 2026 Public Records Request.

64. Subsequently, the City produced some responsive documents on a "rolling basis" on March 6, 2026 and March 26, 2026.

65. However, the City has so far failed to provide any documents responsive to the following requests contained in Request No. 2:

- Records related to the approval of building permits for any "State-licensed community care facilities with seven (7) or more residents in addition to the caregiver" in R-1 zoning districts from January 1st, 2020 to the present.
- A copy of the submittal requirements checklist relevant to pre-review applications for building permits provided by the City available to applicants as that document existed as of October 4th, 2023.
- A list of all properties which have been denied building permits for unpaid fees related to citations for non-compliance with the City's zoning code, or if no such list is available, records of the denials of such applications issued by City employees or officials. The relevant time frame for this request is from January 1st, 2020, to the present.
- A list of all building permits for housing developments designed to serve the City's Muslim population which have been approved or denied by City employees or officials, or if no list is available, records relating to such permits or denials. The relevant time frame for such a request is January 1st, 2020, to the present.

66. Nor has the City provided any objections based on any privilege to the aforementioned requests contained in Request No. 1.

67. An attempt to clarify certain aspects of the City's incomplete responses was made on March 25, 2026. **Exhibit 17,** Letter to City of Lomita, March 25, 2026.

68. However, on March 26, 2026, the City responded, without acknowledging the issues identified on March 25, 2026, that "[t]he City has concluded its reasonable search for records in response to your request. With this letter, and the records previously and herein provided, the City has completed its response to your request and

will close its file on the matter." The "request" referenced in the City's March 26, 2026 letter appears to be Request No. 2 made on January 29, 2026. **Exhibit 18**, Letter from City of Lomita, March 26, 2026.

69. The City then proceeded to provide more responsive documents to Request No. 1 on April 8, 2026 and April 20, 2026. In their letter dated April 20, 2026, the City further stated that with respect to Request No. 1 that "the City has concluded its reasonable search for records in response to your request. With this letter, and the records previously and herein provided, the City has completed its response to your request and will close its file on the matter." **Exhibit 19**, Letter from City of Lomita, April 20, 2026.

**COUNT I**
**Fair Housing Act, 42 U.S.C.A. § 3604(f)(1)**
**(Facial Claim)**

70. Plaintiff incorporates by this reference the allegations of paragraphs 1 through 69, inclusive, as though fully set forth herein.

71. The City's zoning code facially discriminates against disabled persons by requiring a CUP for State-licensed community care facilities with seven (7) or more residents in addition to the caregiver" in residential zones while permitting housing for uses for non-disabled persons as of right in those same zones.

72. The Plaintiff is harmed by this discrimination because it faces an onerous regulatory burden to build its proposed facility on the Property as well as a lack of available options within the City.

73. Because the Plaintiff is a party "aggrieved" by the discrimination in the City's zoning code, in that this discrimination has created obstacles for their planned development, they have standing to bring this claim. *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1157 (9th Cir. 2013) (holding that incorporated group home possessed a causes of action notwithstanding that they were not disabled individuals).

//

74. Under the FHA, it is illegal "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap . . ." 42 U.S.C.A. § 3604(f)(1).

75. State-licensed community care facilities in general, and the Plaintiff's proposed facility on the property in particular, are "dwellings" within the meaning of the FHA. 42 U.S.C. § 3602(b)(defining a "dwelling" under the FHA as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence . . .").

76. These facilities are "dwellings" because they are designed for elderly occupants to remain for a "significant period of time," and the occupants themselves would view these facilities "as a place to return to during that period." *Intermountain Fair Hous. Council v. Boise Rescue Mission Ministries*, 655 F. Supp. 2d 1150, 1157 (D. Idaho 2009), *adhered to as amended*, 717 F. Supp. 2d 1101 (D. Idaho 2010), *aff'd on other grounds*, 657 F.3d 988 (9th Cir. 2011).

77. Furthermore, state-licensed care community facilities, such as residential facilities serving the elderly, serve the handicapped within the meaning of the FHA.

78. A person is handicapped under the FHA if they possess "a physical or mental impairment which substantially limits one or more of a person's major life activities," *Socal Recovery, LLC v. City of Costa Mesa*, 56 F.4th 802, 813 (9th Cir. 2023) (quoting 42 U.S.C. § 3602(h)) (Otherwise known as having an "actual disability.").

79. A "Community care facility" is defined by the City's zoning code and the California Health and Safety Code to mean,

> any facility, place, or building that is maintained and operated to provide nonmedical residential care, day treatment, adult daycare, or foster family agency services for children, adults, or children and adults, ***including, but not limited to, the physically handicapped, mentally impaired, incompetent persons, and abused or neglected children*** . . .

California Health and Safety Code § 1502 (a)(1)(emphasis added); City of Lomita Zoning Code, Sec. 11-1.30.01 (2025) (defining a the "State-licensed community

care facilities with seven (7) or more persons in addition to the caregiver" use with reference to California Health and Safety Code § 1502).

80. "Residential facilit[ies]," a subset of "Community care facilit[ies]" are defined under California law and the City's zoning code to be facilities providing "24-hour nonmedical care of persons in need of personal services, supervision, or assistance ***essential for sustaining the activities of daily living or for the protection of the individual***." California Health and Safety Code § 1502 (a)(1)(emphasis added); City of Lomita Zoning Code, Sec. 11-1.30.01 (2025) (defining a the "State-licensed community care facilities with seven (7) or more persons in addition to the caregiver" use with reference to California Health and Safety Code § 1502).

81. Residential facilities serving the elderly thus serve persons who have conditions which "substantially limits on or more of a perons's major life activities" in that the persons served by these facilities need 24-hour non-medical care and assistance to perform ordinary tasks of daily living. *Socal Recovery, LLC*, 56 F.4th at 813.

82. Therefore, community care facilities such as residential facilities for the elderly serve persons who possess "actual disabilit[ies]" under the FHA. *Id.*

83. As such, the protections under § 3604(f)(1) of the FHA against discrimination in housing against cover "State-licensed community care facilities with seven (7) or more persons in addition to the caregiver." City of Lomita Zoning Code, Sec. 11-1.30.01 (2025).

84. A municipality can violate § 3604(f)(1) of the FHA when it discriminates in its zoning and land use practices on the basis of disability. *See Ohio House, LLC v. City of Costa Mesa*, 135 F.4th 645, 660 (9th Cir. 2025); *see also Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1157 (9th Cir. 2013); *Socal Recovery, LLC v. City of Costa Mesa*, 56 F.4th 802, 814 (9th Cir. 2023).

85. The prima facie case for discrimination under § 3604(f)(1) can be satisfied by a plaintiff merely by showing that the "protected group is subjected to explicitly

*differential*—i.e., discriminatory—treatment." *Ohio House, LLC*, 135 F.4th at 663 (emphasis in original).

86. This can occur when a City makes distinctions in its code with respect to housing for non-disabled persons and housing for disabled persons. *SoCal Recovery, LLC v. City of Costa Mesa*, No. SACV181304JVSJDEX, 2023 WL 8263377, at *6 (C.D. Cal. Aug. 17, 2023)("Because the Ordinances on their face treat Sober Living Homes and Group Homes differently than similar dwellings for nondisabled individuals (i.e., Boardinghouses), has made out a prima facie case of intentional discrimination.").

87. The City presently makes distinctions in its zoning code relating to housing for non-disabled persons and housing for disabled persons in its residential zones.

88. Housing uses serving non-disabled persons permitted as of right in the City's residential zones include, (1) Rooming houses,[2] (2) Senior housing,[3] (3) Multi-family housing,[4] (4) Planned residential developments,[5] (5) Single-family residences[6] and (6) Transitional housing.[7] City of Lomita Zoning Code, § 11-1.30.01 (2025).

89. The City's zoning code thus discriminates against disabled persons by permitting the aforementioned uses by right, but requiring "State-licensed community

---

[2] This term is undefined in the City's zoning code.

[3] This term is defined to mean "mean a residential development that has been designed to meet the physical and social needs of senior citizens, and which otherwise qualifies as housing for older persons, as that phrase is used in the Federal Fair Housing Amendments Act of 1988 and its implementing regulations, and as that phrase is used in California Civil Code § 51.3 and the California Fair Employment and Housing Act." City of Lomita Zoning Code, § 11-1.52.01 (2025) (quotations omitted); see development standards *id.* at §11-1.30.14.

[4] This term is undefined in the City's zoning code.

[5] This term is undefined in the City's zoning code, development standards can be found at City of Lomita Zoning Code, § 11-1.30.17 (2025).

[6] This term is undefined in the City's zoning code.

[7] This term is defined under the City's zoning code with reference to California Health and Safety Code § 50801 (defining "Transitional housing" as "housing with supportive services for up to 24 months that is exclusively designated and targeted for recently homeless persons . . ."); City of Lomita Zoning Code, § 11-1.30.01 (2025).

care facilities with seven (7) or more persons in addition to the caregiver" to obtain a CUP in each residential zone within the City.

90. This discrimination is not mitigated by the fact that "State-licensed community care facilities with six (6) or fewer persons" are permitted as of right in every residential district.

91. Under the City's code, there are no limits for the number of residents who might be allowed to stay at Rooming houses, Senior housing, Multi-family housing, and Transitional housing uses which are by right uses in several residential zoning districts.

92. Conversely, if a State-licensed community care facility wants to serve more than six persons in a residential zoning district it must obtain a CUP.

93. Such a distinction represents a preference in housing—i.e., differential treatment—for non-disabled persons over housing for disabled persons in the City's residential zoning districts. *Ohio House, LLC*, 135 F.4th at 663.

94. Finally, with respect to the Plaintiff's proposed community care facility in an R-1 zone, it is now required to obtain a CUP whereas "Transitional housing" uses, which do not serve disabled persons, are permitted as of right in this zone.

95. Therefore, the Plaintiff has demonstrated a prima facie case for discrimination under § 3604(f)(1) of the FHA because it can demonstrate differential treatement in the housing opportunities available to non-disabled as opposed to disabled persons.

96. To the extent that the City of Lomita specifically changed its zoning code to place greater regulatory burdens on the Plaintiff, this is also evidence of discriminatory intent under the FHA. *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1164 (9th Cir. 2013) *quoting Flores v. Pierce*, 617 F.2d 1386, 1391 (9th Cir.1980) (Kennedy, J.), *cert. denied*, 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980)("We have recognized that it is unlawful discrimination to subject individuals to 'the rigors of the governmental or administrative process . . . with an intent to burden, hinder, or punish them by reason of their [membership in a protected class.]'").

97. The burden of proof under the FHA therefore shifts to the municipality to justify their differential treatment. *See id.* at 664.

98. The City cannot justify its differential treatment in its zoning code, disadvantaging disabled persons seeking housing opportunities.

99. As such, the City's requirement that "State-licensed community care facilities with seven (7) or more persons in addition to the caregiver" obtain a CUP in the City's residential zones violates § 3604(f)(1) of the FHA.

**COUNT II**
**California Fair Employment and Housing Act, Cal. Gov't Code § 12955 (FEHA)**
**(Facial Claim)**

100. Plaintiff incorporates by this reference the allegations of paragraphs 1 through 99, inclusive, as though fully set forth herein.

101. Similarly to the FHA, the California Fair Employment Housing Act (FEHA), Cal. Gov't Code § 12955 *et seq.*, prohibits discrimination based upon disability in zoning laws affecting housing.

1. Under the FEHA, it is illegal,

> [f]or any person to make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a housing accommodation that indicates any preference, limitation, or discrimination based on . . . disability . . . or an intention to make that preference, limitation, or discrimination.

Cal. Gov't Code § 12955 (c).

102. A facially discriminatory policy in a zoning code violates Cal. Gov't Code § 12955 (c). Cal. Code Regs. Tit. 2, § 12042 (g).

103. Courts apply the same same standards to housing discrimination under the FHA and the FEHA. *Doe v. Sterling*, No. 2:23-CV-10061-RAO, 2025 WL 3724625, at *4 (C.D. Cal. Dec. 19, 2025) ("Claims brought under both the FHA and the FEHA are analyzed under the same standard, and the FEHA 'largely mirrors its federal

counterpart.'")(quoting *Ohio House, LLC v. City of Costa Mesa*, 135 F.4th 645, 661 (9th Cir. 2025)).

104. The City's zoning code makes distinctions between disabled persons and non-disabled persons by requiring "State-licensed community care facilities with seven (7) or more persons in addition to the caregiver" uses to obtain a CUP in residential zones, while permitting housing uses serving the non-disabled as of right in those same zones.

105. Therefore, the Plaintiff has made a prima facie case for discrimination under the FEHA, Cal. Gov't Code § 12955(c).

106. The burden therefore shifts to the City to justify this discriminatory treatment.

107. The City cannot justify this discriminatory treatment.

108. The City cannot demonstrate that these facial distinctions are the "least-restrictive means" of achieving its regulatory purpose behind its zoning code. *Ohio House, LLC v. City of Costa Mesa*, 135 F.4th 645, 666 (9th Cir. 2025).

109. As such, the City's requirement that "State-licensed community care facilities with seven (7) or more persons in addition to the caregiver" obtain a CUP in the City's residential zones violates § 12955 (c) of the FEHA.

## COUNT III
## California Constitution
## and the California Public Records Act

110. Plaintiff incorporates by this reference the allegations of paragraphs 1 through 109, inclusive, as though fully set forth herein.

111. The California Constitution, Art. I, § 3(b)(1), declares that "[t]he people have the right of access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny."

//

//

112. The California Public Records Act (hereinafter "CPRA," Cal. Gov't Code § 7920), declares that "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state."

113. The CPRA provides, Cal. Gov't Code § 7922.525(a), that "[e]ach agency, upon a request for a copy of records, shall, within 10 days from receipt of the request, determine whether the request, in whole or in part, seeks copies of disclosable public records in the possession of the agency and shall promptly notify the person making the request of the determination and the reasons therefor." Cal. Gov't Code § 7922.535 (emphasis added).

114. To date, the City has failed to provide responsive documents, or any objections, to the following public records requests:

a. Public Records Request No. 1:
   - If available, a video recording with audio, or, if unavailable, an exact transcript of the following meetings:
     - Meeting between Brianna Rindge, Laura MacMoran, and William Lawson with Farah and Sikander [sic] Bangash on March 1st, 2023.
     - All zoom calls between attorney Edward J. Casey, and municipal officials related to the Bangashs' proposed use of their Property.
     - Meeting between Brianna Rindge, Michael Bai, and Sikander [sic] Bangash on February 26th, 2024.

b. Public Records Request No. 2:
   - Records related to the approval of building permits for any "State-licensed community care facilities with seven (7) or more residents in addition to the caregiver" in R-1 zoning districts from January 1st, 2020 to the present.

- A copy of the submittal requirements checklist relevant to pre-review applications for building permits provided by the City available to applicants as that document existed as of October 4th, 2023.
- A list of all properties which have been denied building permits for unpaid fees related to citations for non-compliance with the City's zoning code, or if no such list is available, records of the denials of such applications issued by City employees or officials. The relevant time frame for this request is from January 1st, 2020, to the present.
- A list of all building permits for housing developments designed to serve the City's Muslim population which have been approved or denied by City employees or officials, or if no list is available, records relating to such permits or denials. The relevant time frame for such a request is January 1st, 2020, to the present.

115. No objections based on any claim of privilege has been provided for these requests.

116. The City has also failed to confirm, following several clarifying questions made to the City on March 25, 2026, that it has no responsive documents available to these requests. **Exhibit 17**, Letter to City of Lomita, March 25, 2026.

117. Notwithstanding, the City has stated on March 26, 2026 and April 20, 2026 that it has concluded its response to public records requests No. 1 and No. 2 respectively. **Exhibit 18,** Letter from City of Lomita, March 26, 2026; **Exhibit 19**, Letter from City of Lomita, April 20, 2026.

118. By their refusal to provide timely compliance with the CPRA, by their continuing willful refusal to provide documents responsive to the document requests, Defendant has violated the California Constitution, Art. I, § 3, and the California Public Records Act, Cal. Gov't Code § 7920 *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Ermanita respectfully requests a Judgment against Defendant City of Lomita on each and every count alleged herein as follows:

1. Adjudge, decree and declare the rights and other legal relations of the parties to the subject matter in controversy in order that such declaration shall have the force and effect of final judgment and that the Court retains jurisdiction of this matter for the purpose of enforcing the Court's Order;

2. Pursuant to 28 U.S.C. § 2201, declare the City's use table, § 11-1.30.01 of the City of Lomita's zoning code, to be in violation of the federal Fair Housing Act (FHA) and California Fair Employment and Housing Act (FEHA), and and further declare that Plaintiff has a right to operate its proposed community care facility by right in the City's residential zoning districts.

3. Pursuant to 28 U.S.C. § 2202, Fed. R. Civ. Pro. 64, 42 U.S.C. § 1983, and 42 U.S.C. § 2000cc-4, permanently enjoin Defendant from enforcing the Ordinance to the extent that it prevents Plaintiff from constructing its proposed community care facility on the 2254 250th Street, Lomita, CA 90717 as of right.

4. Pursuant to 42 USC § 1988, 42 U.S.C. § 2000cc-4(d), Fed. R. Civ. Pro. 54(d), and other applicable law, award Plaintiff its reasonable attorney fees, costs;

5. According to 28 U.S.C. § 2202 and Fed. R. Civ. P. 64, award Plaintiff compensatory and nominal damages.

6. With respect to the Public Records Act violation:

   a. Issue a Writ of Mandate directing Defendant to comply fully and without further delay with the California Public Records Act and to furnish Plaintiff all public documents meeting the description in its requests;

   b. In the alternative, issue an Order to Defendant to show cause why the court should not issue such a writ and thereafter issue a peremptory

writ compelling Defendant to perform its public duty as set forth above;

c. Declare that Defendant has violated Plaintiff's rights under the California Constitution, Art. I, § 3, and under Cal. Gov't Code § 7920 et seq., by failing to produce the requested documents;

d. Enter an Injunction directing that, because Defendant's delay in complying with their obligations under the CPRA was without substantial justification, Defendant must waive all fees associated with Plaintiff's requests;

e. Enter Judgment in the Plaintiff's favor for nominal damages;

f. Award Plaintiff reasonable attorneys' fees and costs as authorized by Cal. Gov't Code § 7923.115; and

7. Order such additional relief as the Court may deem just and proper.

**Jury Demand**

Ermanita Corporation hereby demands a trial jury in the action of all issues so triable pursuant to Rule 38(b) of the Federal Rules of Civil Procedure

**Verification**

My name is Sikandar Bangash. I am the authorized representative of Ermanita Corporation. I declare, under penalty of perjury authorized by 28 U.S.C. § 1746, that the factual allegations contained in paragraphs 7 through 69 are true or, to the best of my knowledge, true and correct.

Executed on the 30th day of April, 2026

By: Sikandar Bangash

Dated: June 3, 2026

Respectfully Submitted,

LURIE, ZEPEDA, SCHMALZ,
HOGAN & MARTIN

*/s/ James Finsten*
James J. Finsten, State Bar No. 234999
jfinsten@lurie-zepeda.com
1875 Century Park East, Suite 2100
Los Angeles, California 90067-2574
P: (310) 274-8700 F: (310) 274-2798

*Attorneys for Plaintiff*